Chief Justice Robf.e.tso'N
delivered the opinion of the court,
This is an action of-assault and battery, instituted by the defendant against the plaintiffs in error, and is one of a multitude of suits for trespass which have originated from an obstinate and violent contest between William Frame (the defendant’s father) and Samuel Tribble, (one of the plainiffs,) about a few.acres of land alternately occupied by each of them, since a judgment in ejectment, whereby the land was adjudged to be the property of Tribble’s vendor.
The land had been cleared and enclosed by a fence, in the winter 1822, by a tenant holding under S. Tribble, Sr. but neither of the belligerent claimants had ever resided on it. The case of Tribble vs. Frame et al. V Liftell, 287j presents the material facts respecting the title, as,well as those relating to the possession and conduct of the parties. *600 prior to the 22nd of Mav. 1822. In that, year the ground claimed by S. Tribble and Wm. Frame, Sr. produced a crop of tobacco, planted in part by each of them, and the whole of which was cultivated occasionally bv each, both of them claiming the en* tire crop, and the exclusive possession.
In April. 1823. one of Wm Framed sons had begun to plough the land On the 30th of that month, whilst the son, who had been ploughing, was at breakfast, and when no person was on the ground, the plaintiffs in error entered upon it with a cart, and were engaged in the act of loading the cart with rails; whereupon, William Frame, Sr. having been notified of the fact, went, with the defendant in error and others, upon the land, and having enquired, in a loud voice. “ What (toes all this mean.?” was answered bv S. Tribble, Sr. “/ am taking this fence-from where I do not want it, and putting it where I da want it — and I want you to go away and not interrupt •me.” The plaintiff and one of his brothers immediately began to throw the rails out of the cart. Whereupon, S. Tribble, Sr. struck the plaintiff, and a general affray ensued. This suit is brought for a battery in that rencounter.
The plaintiffs relied on pleas setting out in legal form and manner, the foregoing facts, according to their true effect; and the jury, sworn to try the issue, found a verdict for the defendant in error for $50 in damages; for which the court rendered judgment, after overruling a motion by the plaintiffs in error for a new trial. ■
S. Tribble, Sr. held the paramount title to the land, and had. a perfect legal right to enter upon it. If the possession should be deemed to have been his ever since May, 1822, to the moment of the battery, there can he no doubt that the battery was justifiable; for it cannot be doubted that, as force was employed to dispossess him of the rails, he had a right to resist by striking the assailant. McIlroy vs. Cocieran, II Marsh. 271.
But the counsel for the defendant insists that Wm. ÍVaine, Sr. was in the actual possession of the land.,. *601 nntl had .a right to repel the plaintiffs by force; and that, therefore, the verdict was right.
At common h^Hn'^ho1 title to’land and having the right to uVuctuiU ^ force to effoct ”is.°“tryfoivfentry and detainer have „b°w ¡ destroy the ¡¡ commou l&vr " ¡N]** aciicmof ** trespass quart' fut’ry5 by pleading and p.roN,‘?a ^herumte-' nemmtum is f°”^0pJeGsin ‘^° tlGS"
Were it admitted that the facts are such as to have authorized the jury to find'thc state of case snpposed by the defendant’s counsel, it would become necessary to decide whether Frame had a legal right to resist, by force, a forcible entry by Tribble.
According to the common law, a person holding the title to land, and having the right of entry, might use actual force, if necessary, for overcoming anv forcible resistance; because his right of entry being, perfect, no other person could lawfully resist him in the exercise of his perfect right. The British statutes of forcible entry and detainer, declared that an entry, with actual force., should subject the party, so entering, to an indictment for any consequential breach of the public peace, and to restitu tion of possession, and also to an action of trespass, But these statutes have ever been so construed as not to aiiect tne common law right or justifying, in an action of trespass, guare clausum frigit, the forcihie entry, bv pleading and proving a right of entry; and hence, liberum tenementum has, notwithstanding those statutes, been always held to be an effectual plea to the -action of trespass, and thus proves that the right of entry is a right to make an actual entry on the land. Ba. ab. Forcible Entry and Detainer, A. III Ja. Law Dic. 88; III Chitty’s Blackstone, 4 and 5. n. 12; Ib. 110, and notes; Sel n. p. Whether the common law right of applying force, if necessary, to the person of the occupant, was affected by the statutes has not, so far as we know, been distinctly settled bv satisfactory authority. This court truly-said, in the case of Tribble vs Frame et al. III Mon that the right of entry does not, pet se, give the right, to use violence upon the person or personal property of the person in the possession of the land. Rut. in that case, there is no distinct declaration as to the right to employ-force to the person, if it sir'll he rendered necessary to the accomplishment of the entry, in consequence-of personal resistance with force. In McIlroy vs. Cockran, (supra,) it was correctly decided that the possessor has a right to resist, with force, a forcible intrusion. But *602 •whether such resistance would be lawful against & person having a right to enter, was not considered in that case. We deem it wholly unnecessary and evert extra-judicial to express an opinion on that point in this case ; for we are clearly of the opinion, that S. Tribble was in the actual possession of the land be: fore and at the time of the affray, and that F ramc had no right to resort to force to expel him, and, in doing so, was the agressor.
It seems to us that Tribble was, by construction of law, in the actual possession of the land during the year 1822; for though he and Frame both used and cultivated the ground, sometimes alternately and sometimes simultaneously, as the superior right was in Tribble, the law deemed the entire actual possession his. Hord vs. Bodley, V Litt. 88. There is no fact that would authorize a jury to infer an intentional dereliction or actual abandonment of that possession, or an ouster by Frame during the fall and winter of 1822 3. Then, the entry by Frame, r by his son for him, -in April, 1823, was 'tortious : moreover, it was not of such a character as to have operated as an actual or constructive disseizin. But if it could be deemed an buster of Tribble’s actual possession, Tribble certainly had a perfect legal .right to regain his possession by a lawful entry; and it is immaterial whether he had or had not a right to apply actual force to the person of the defendant in error, in the act of entering, in order to consummate the entry, because no such force was exerted in entering. He had entered on the land and was in the actual and rightful possession of it, using it lawfully as his own, when force was used, not to prevent a tortious entry, but to expel him after he had full and complete possession, and to frustrate his enjoyment of the land. It cannot be shewn that actual force was employed in the act of entering ; nor can it be doubted that Tribble had actually perfected his entry and was in actual possession when he was assailed by Frame. In Tribble vs. Frame, V Littell, 88, this court decided, upon similar facts, that Tribble must be presumed to have been in possession. In that case, Tribble and his son had entered, in May, 1822, on the land, and were making a fence. In this *603 <ase, Tribble and his son had entered, in April, 1823, and were removing a fence. And the court, in that case, said — “ the right of Cribble to enter reinained, and that right may have been thereafter exerted by his actually entering upon the land, and from the fact of his being upon the latid, using it as his own, he must he presumed to have so exerted his right.’7 That case must be decisive of this. The facts here are substantially the same, and evince an entry and a pedis possessio -animo cl-amanfji. We are of the opinion, that the jury had no right to infer from the facts that Tribble was not in the actual possession of# the land, claiming and using 'it as his own, at the time of the battery; and, consequently, the judgment cannot he sustained unless the defendant was justifiable in forcibly attempting to take away the rails. As the land belonged to Tribble, he could not have been guilty of a trespass upon it, or upon-any thing pertaining to it; being in lawful possession, he had a right to remove the rails,‘•[especially as his tenant made them,) and the defendant had not a legal right to retake them by force. If Frame had such a prior actual possession as would have entitled him to restitution under the statute of forcible entry and detainer, that was his only lawful remedy. Being actually ousted,- he had no right to use fgrce to regain the possession. It was the policy of the statute to prevent such self-redress. And, moreover, it could not have been resorted to without defeating Tribble’s right of entry. If he had been afraid to enter upon the land, he might have made a constructive entry. But he had an undoubted right to make an actual entry. He did make it, and without the exertion of actual force.
Person haying the legal an?befo ^aa<1 ’ actuarios-1 ¡.ias f by force!!?6 necessary, any attempt ^est'him ment thereof or of the free “j®? ofaDX apperÍainiue. **
Being thus in possession, he had a right to remain, and to use, in his own way, his own property, and had a right to repel force by force, so lar as became necessary to defend his possession and use. if, by entering on the land to plough it, and by beginning to plough, Frame acquired lire exclusive actual possession of the land, though he had not the title, sureiy Tribble’s entry (shortly afterwards) vested the exclusive actual possession in him, especially as the land was his.
of1 forcible outry and drtainor do not ¡ififc-'t the r¡g,,i of entry to greater íi-íl statutef on snme subject have been-construed to affect such right in England.
does°not*take Our statute away the common law right of entry. Person who has a right ot entry, and who makes an actual entry in consummation of that right, can only be mode pointed out by the cibíemitr r°r" and detainer. Any forcible person so in actual possession is actionable.
And he may repel by force any forcible attempt to expel him. He must be removed secjmdumlegem
The statute of 1810, of this state, cannot materially affect this case. It should not be construed as affecting the commoniaw right of entry, or the legal consequences resulting from an actual entry to any "reat-er extent than they had been affected in England by the statutes of forcible entry and detainer enacted in that kingdom. The statutes of England only to actual force. The Kentucky statute applies not only to entries with actual force, but also to entries without suqli force, but against the will ^!e Person bi actual possession at the time of en-»try- But, surely, as the-statutes of England did not take away, the right of entry in fact, there can be no good reason for supposing that our statute of 1810 was intended to have such an operation. In England, a person, having a right of entry, was deemed in the actual possession whenever he made an actual entry, and could not he evicted in any other legal mode than by a proceeding under the statutes of lorcihle enti^ and detainer. His entry was as beneficial, as lawful and as effectual as it would have been according to the common law, except only that lie was liable to restitution under the statutes; and might have been responsible, criminalefer, for any breach of the peace committed in the act of entering. As the practical construction and operation of the British statutes had been long settled and well understood prior to the enactment of the statute of 1810, we should presume that the legislature of Kentucky intended that the provisions of that act should have the like effect, and no other, on the right of entry, And such has been its interpretation by this court, This might be shewn by many intimations ; and is directly and. undeniably recognized, as too unquestionable to be debated, in the case in V Littell between these same parties, and in every respect like this. We could not disturb a doctrine so firmly established by both analogy and authority.
The right of entry still exists. It is a substantial - and practical right. It is useless to talk about a A possession so acquired cannot be rightfully divest-right of entry that is only speculative. A right of entry is a right to enter on the land to which the right is attached, and thus to obtain the possession in fact. *605 et! or disturbed in any other mode than that prescrihed-by the act of 1810 ; and any forcible intrusion upon it will be unlawful and, of course, actionable ; otherwise, the prescriptive right of entry would be a mere shadow. But it is, as it was anciently, solid and availing. The action of ejectment is founded upon it. And it would be difficult to shew how ejectment could be maintained in any case in which the lessor has nota legal right to enter on the land. The object of that action is to obtain, , by the judgment of a court and the executive aid of the law, the actual possession, which the plaintiff was unwilling or afraid to attempt to acquire by his own act of entry, but which he might have thus obtained and lawfully retained unless evicted under the statute of 1810. As such an entry, by a person* having the right of entry, will vest in him, by operation of law, the actual possession, be thereby acquires, as an incident, the right to maintain trespass for an intrusion upon him, and may repel, by force, any forcible attempt to expel him without legal an-*' thority. The statute itself is founded on this obvious and reasonable principle.
If a person exercise ills right of recaption, even in a forcible or unlawful manner, still he has a right to retain his property when thus retaken, and to resort to actual force in defending his possession against the former possessor.
As Tribble had a right to enter on the land, and ¡ did actually enter, and thereby obtained the actúalo possession ; and as Frame was in fact and in law ¶ out of possession, the subsequent entry by the defen- \ dant was without the authority or sanction of law ; ;|j and, consequently, the attempt to rescue the pos- W session by force was wrongful, and justified the 1 force with which lie was repelled.
Tribble was actually in, and Frame was actually out of possession.
Tribble had neither done nor was doing any wrong to Frame. He had not touched any thing which belonged to Frame. He had not assaulted or menaced the person of Frame, He had entered pcaccbly, and without the exertion of any actual force, upon his own land in the absence of Frame, and *606 was doing that and that only for which Frame could have had no cause of action against him for damages, because it was not a trespass oran injury to the person or property of Frame. If Frame had submitted to the enjoyment by Tribble of a lawful right, or had, for any supposed wrong, appealed to the law for redress, the scenes of outrage and violence which resulted from the tortious conduct of himself and coadjutors would never have occurred ; and this and sundry other suits, growing out of the affray, sought and instigated by him, would never have' been brought. Fie and his party committed the first breach of the peace, and their conduct jusjustified the defensive acts of which some of them now complain.
Monroe and Hoggin, for plaintiff’s; Hanson, for defendant.
Wherefore, believing that S. Tribble was in the actual possession of the land doing nothing wrongful, and believing also that the jury ought not to have inferred that he was not thus possessed, this court (Judge Underwood dissenting) thinks that the ‘circuit court erred in overruling the motion for a now trial. Consequently, the judgment must be reversed, and the cause remanded for a new trial.